Filed 5/2/17; pub. order 5/24/17 (see end of opn.)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| GUARANTEE FORKLIFT, INC., dba GFL, INC.,<br><br>    Plaintiff and Appellant,<br><br>v.<br><br>CAPACITY OF TEXAS INC.,<br><br>    Defendant and Respondent. | A147954<br><br>(Alameda County<br>Super. Ct. No. HG14736249) |

Plaintiff Guarantee Forklift, Inc. (GFL) appeals from a summary judgment granted in favor of defendant Capacity of Texas (Capacity) on GFL's statutory claim for the termination of a vehicle franchise without good cause in violation of Vehicle Code sections 11713.3, 3060, 3061 and 3066.[1]  The trial court ruled that because GFL was not a "licensee" under section 11726, it lacked standing to bring a private cause of action based on the alleged violation.  We reverse.

## I. *Statutory Backdrop*

"Section 3000 et seq. and section 11700 et seq. establish a statutory scheme regulating the franchise relationship between vehicle manufacturers and distributors, and their dealers.  [Citation.]  The purpose of this scheme is " ' "to avoid undue control of the independent new motor vehicle dealer by the vehicle manufacturer or distributor and to

---

[1]    Further statutory references are to the Vehicle Code unless otherwise indicated.

1

insure that dealers fulfill their obligations under their franchises and provide adequate and sufficient service to consumers generally." ' " [Citations.]" (*Powerhouse Motorsports Group, Inc. v. Yamaha Motor Corp.* (2013) 221 Cal.App.4th 867, 877 (*Powerhouse*).)

Vehicle Code section 331, subdivision (a), provides: "A 'franchise' is a written agreement between two or more persons having all of the following conditions: [¶] (1) A commercial relationship of definite duration or continuing indefinite duration. [¶] (2) The franchisee is granted the right to offer for sale or lease, or to sell or lease at retail new motor vehicles . . . manufactured or distributed by the franchisor or the right to perform authorized warranty repairs and service, or the right to perform any combination of these activities. [¶] (3) The franchisee constitutes a component of the franchisor's distribution system. [¶] (4) The operation of the franchisee's business is substantially associated with the franchisor's trademark, trade name, advertising, or other commercial symbol designating the franchisor. [¶] (5) The operation of a portion of the franchisee's business is substantially reliant on the franchisor for a continued supply of new vehicles, parts, or accessories."

Section 331.1 defines a "franchisee" as "any person who, pursuant to a franchise, receives new motor vehicles subject to registration under this code . . . from the franchisor and who offers for sale or lease, or sells or leases the vehicles at retail or is granted the right to perform authorized warranty repairs and service, or the right to perform any combination of these activities." Section 331.2 defines a "franchisor" as "any person who manufactures, assembles, or distributes new motor vehicles subject to registration under this code . . . . and who grants a franchise."

Section 3060 provides that no franchisor shall terminate a franchise unless it gives the franchisee and the New Motor Vehicle Board (Board) written notice of the proposed termination, establishes "good cause" for the termination, and gives the franchisee the right to file a protest. (§ 3060, subds. (a)(1), (2); see *Powerhouse*, *supra*, 221 Cal.App.4th at p. 878.) When a protest has been filed with the Board, "the franchisor may not terminate or refuse to continue until the board makes its findings." (§ 3060, subd. (a)(2).) Section 3061 sets forth a list of nonexclusive factors for the Board to

2

consider when determining whether good cause exists. (§ 3061; *BMW of North America, Inc. v. New Motor Vehicle Bd.* (1984) 162 Cal.App.3d 980, 990.)

Section 3050, subdivision (d), gives the Board the power to adjudicate certain dealer-distributor-manufacturer disputes, including the power to "[h]ear and decide, within the limitations and in accordance with the procedure provided, a protest presented by a franchisee pursuant to Section 3060. . . ." (§ 3050, subd. (d).) Section 3066 sets forth the procedure to be followed by the Board when hearing a protest, and section 3067 requires the final decision of the Board to be in writing with factual findings and reasons stated. Either party may file a petition for writ of administrative mandamus to seek review of the Board's final decision. (§ 3068; see *Automotive Management Group, Inc. v. New Motor Vehicle Bd.* (1993) 20 Cal.App.4th 1002, 1009.)

Section 3050, subdivision (f), provides that notwithstanding the Board's power to hear a protest filed by a franchisee, "the courts have jurisdiction over all common law and statutory claims originally cognizable in the courts. For those claims, a party may initiate an action directly in any court of competent jurisdiction." Section 11726 provides, "Any licensee suffering pecuniary loss because of any willful failure by any other licensee to comply with any provision of Article 1 (commencing with Section 11700) or 3 (commencing with Section 11900) of Chapter 4 of Division 5 or Article 3 (commencing with Section 3052) of Chapter 6 of Division 2 or with any regulation adopted by the department or any rule adopted or decision rendered by the board under authority vested in them may recover damages and reasonable attorney fees therefor in any court of competent jurisdiction. Any licensee may also have appropriate injunctive relief in any such court." Among the statutes encompassed by section 11726 is section 11713.3, which sets forth a list of acts that are unlawful when committed by a vehicle manufacturer or distributor against a dealer. (*Powerhouse*, *supra*, 221 Cal.App.4th at p. 878.) Section 11713.3, subdivision (l), provides that it is unlawful for a manufacturer or distributor "[t]o modify, replace, enter into, relocate, terminate, or refuse to renew a franchise in violation of Article 4 (commencing with Section 3060) . . . ."

3

## II. *Factual and Procedural History*

### A. Franchise Agreement

Capacity is a Texas company that manufactures semi-tractors under the trade name "Trailer Jockey." GFL is an Oakland, California company that became an authorized dealer of Capacity products under a franchise agreement executed in July of 1995. At the time of the summary judgment motion in this case, GFL did not have a motor vehicle dealer's license.[2]

### B. Capacity's Notice to Terminate Franchise and GFL's Protest

On February 5, 2013, Capacity sent GFL and the Board written notice of its intent to terminate GFL's franchise, alleging GFL had (1) misrepresented the employment status of a former GFL employee who went to work for Capacity's chief competitor; and (2) allowed the employee to continue accessing Capacity's online parts ordering system while working for the competitor. (See § 3060, subd. (a)(1).) GFL filed a protest with the Board, alleging there was no good cause for the termination, as is required by the Vehicle Code. (See § 3060, subd. (a)(2), 3061.)

In March 2014, following a December 2013 hearing on the protest, an administrative law judge (ALJ) issued a written opinion on the matter. The ALJ made factual findings that GFL's principal had misrepresented the status of the former employee and had provided him with the password to access Capacity's website after the employee went to work for a competitor of Capacity's. Nonetheless, the ALJ concluded

---

[2]     Sections 11700 and 11701 require a motor vehicle dealer to obtain a license from the Department of Motor Vehicles (DMV) before selling "vehicles of a type subject to registration. . . ." The evidence presented on summary judgment regarding GFL's licensing status consisted of an October 16, 2015, printout from the DMV website (authenticated by Capacity's trial counsel's declaration) showing that GFL was not on the list of dealerships in Alameda County holding an occupational license. In its response to Capacity's separate statement of material facts, filed on December 30, 2015, GFL indicated the following fact was undisputed: "A review of the California DMV website reveals [GFL] is not listed as a motor vehicle dealer license holder." GFL's "further additional facts" in response to Capacity's separate statement do not suggest that GFL previously held a motor vehicle license, and neither party has suggested during the course of the briefing or oral argument that GFL previously held such a license.

4

Capacity had not established good cause for terminating the franchise because GFL had not violated the express terms of its written franchise agreement. In April 2014, the Board adopted the ALJ's proposed decision in a two-to-one vote.

C. Petition for Writ of Administrative Mandamus—Sacramento County

Capacity filed a petition for writ of administrative mandamus in the Sacramento County Superior Court seeking to set aside the Board's decision. (*Capacity of Texas v. New Motor Vehicle Board* (Sacramento Super. Court No. 34-2014-80001848).) In a decision issued August 3, 2015, the Sacramento County Superior Court issued a written order granting the petition, and on September 1, 2015, it issued a peremptory writ of mandamus directing the Board to set aside its decision and enter a new decision overruling GFL's protest to the termination of its franchise.

D. Appeal from Judgment Issuing Administrative Writ

In November 2015, GFL and the Board filed notices of appeal from the Sacramento County Superior Court's order granting the writ. This appeal was handled by the Third District Court of Appeal. (*Capacity of Texas v. New Motor Vehicle Board*, Court of Appeal, No. C080679.)

E. Alameda County Action for Damages (The Instant Lawsuit)

On August 8, 2014, during the pendency of the writ proceeding in Sacramento County, GFL filed the instant action against Capacity in the Alameda County Superior Court. GFL's complaint for damages contains a single cause of action for statutory violations by Capacity and alleges in relevant part: "16. Defendant Capacity willfully violated Section 11713.3, which makes unlawful several actions by a franchisor, including those set forth in subdivision (l), 'To modify, replace, enter into, relocate, terminate, or refuse to renew a franchise in violation of Article 4 (commencing with Section 3060) of Chapter 6 of Division 2.' Capacity's unilateral termination of its franchise with GFL on or about February 27, 2013 was in violation of the provisions of Sections 3060, 3061, 3066 and 11713.3(l)." The complaint also cited section 11726, which as previously noted, allows a party licensed by the Department of Motor Vehicles

5

to bring suit against another licensee for the willful failure to comply with section 11713.3.

F. Capacity's Motion for Summary Judgment

Capacity filed a motion for summary judgment in the Alameda County Superior Court on the grounds that (1) GFL could not recover damages for the termination of its franchise in violation of section 11713.3 because its franchise had not in fact been terminated by Capacity and GFL did not suffer a pecuniary loss, and (2) GFL did not have standing to sue for a violation of section 11713.3 under section 11726, because section 11726 only authorizes actions by "licensees" of the DMV (i.e., persons or entities possessing a motor vehicle license under section 11700) and GFL did not possess such a license.

In its opposition to the motion for summary judgment, GFL acknowledged it did not have a motor vehicle license, but argued it was entitled to bring a statutory claim under the authority of section 11731.3, subd. (l), based on Capacity's termination of the franchise without good cause. As to whether the franchise had in fact been terminated, GFL acknowledged it was currently a Capacity dealer, but alleged there was a question of fact as to whether the franchise had been unlawfully terminated between February 28, 2013, and April 10, 2014, a period following the filing of its protest with the Board, during which Capacity refused to sell or ship vehicles or parts to GFL.

On January 19, 2016, while the appeal from the judgment in the Sacramento County case was still pending, the Alameda County Superior Court granted Capacity's motion for summary judgment and dismissed the action for damages. The court concluded GFL did not have standing to bring a cause of action for damages under section 11726 because it was not a licensee within the meaning of the statute. Its order did not address whether the lack of a "termination" had been established as a matter of law or whether GFL had suffered pecuniary loss.

G. The Instant Appeal

On March 21, 2016, GFL filed the instant appeal from the order granting summary judgment. In its opening brief filed on August 30, 2016, GFL acknowledged it is not a

6

licensee under section 11726, but argued that section 11713.3, subdivision (l), allows a private cause of action by any franchisee, licensed or not, that is damaged by the termination of a vehicle franchise agreement in violation of section 3060. (See *Larry Menke v. DaimlerChrystler Motors Co. LLC.* (2009) 171 Cal.App.4th 1088, 1094 (*Menke*) ["section 11726 merely specifies the remedy available for violations of [section 11713.3,] and does not expand or restrict the scope of those entitled to sue under it"].)

On September 29, 2016, Capacity filed its respondent's brief, which included as attachments copies of court orders showing that the appeals filed by GFL and the Board from the Sacramento County Superior Court case had been dismissed. GFL filed its reply brief on October 19, 2016.

On January 11, 2017, this Court sent the parties the following request for supplemental briefing: "In its respondent's brief filed on September 29, 2016, Capacity of Texas has provided copies of August 2016 orders issued by the Third District Court of Appeal in case number C080679, dismissing the appeals filed therein by the New Motor Vehicle Board and Guaranteed Forklift, Inc. [¶] This court requests supplemental briefing on the following issues: [¶] (1) Should this court take judicial notice of those dismissal orders? [¶] (2) Is the judgment issuing a writ of mandamus in Sacramento County Superior Court Case Number 34-2014-80001848 [] now final? [¶] (3) If final, does the Sacramento County Superior Court's judgment, which necessarily determined that good cause existed for the termination of the franchise agreement, bar the action by Guaranteed Forklift, Inc., in the instant case? (See, e.g., *Bronco Wine Co. v. Frank A. Logoluso Farms* (1989) 214 Cal.App.3d 699.) [¶] (4) Assuming the Sacramento County Superior Court's judgment has preclusive effect over the claims in this case, does this render the instant appeal moot? (See *Simi Corp v. Garamendi* (2003) 109 Cal.App.4th 1496, 1503 ["case becomes moot when a court ruling can have no practical impact or cannot provide the parties with effective relief"].)"

GFL has filed a supplemental brief in which it acknowledges the Sacramento County Superior Court judgment is now final, but argues "the issue of [its] lost profits as a result of Capacity improperly terminating the franchise agreement between Capacity

and GFL prior to a final decision on the issue by the [Board] has not actually been litigated." Capacity has filed a supplemental brief arguing the instant appeal should be dismissed because the final judgment in the Sacramento County case necessarily determined that good cause existed for the termination of the franchise, and GFL cannot prevail without showing that Capacity acted without good cause.

### III. *Request for Judicial Notice*

Capacity has filed a request asking this Court to take judicial notice of documents filed in the Sacramento County Superior Court and the Third District Court of Appeal to establish that (1) the Sacramento County Superior Court necessarily determined the issue of good cause in granting Capacity's petition for writ of administrative mandamus; and (2) that decision is now final. GFL does not challenge the authenticity of these documents, but argues they should not be considered because (1) they are not admissible to prove the truth of their contents; and (2) they are not relevant to the instant appeal. We disagree, and grant the request for judicial notice.

The documents submitted by Capacity are as follows: (1) An order issued on August 25, 2016, by the Third District Court of Appeal, granting the Board's request to voluntarily dismiss its appeal from the Sacramento County Superior Court's order granting Capacity's petition for writ of administrative mandamus, and issuing a partial remittitur forthwith. (2) An order issued on August 17, 2016, by the Third District Court of Appeal, dismissing GFL's appeal from the Sacramento County Superior Court's order granting Capacity's petition for writ of administrative mandamus, based on its failure to file an opening brief pursuant to California Rules of Court, rule 8.220(a), and the remittitur issued on October 18, 2016. (3) A new decision by the Board, issued January 18, 2017, overruling GFL's protest to the termination of its franchise, in compliance with the now-final order of the Sacramento County Superior Court. (4) The Board's return to the writ of administrative mandamus, filed January 20, 2017, in the Sacramento County Superior Court. (Court of Appeal No. C080679; Sacramento Super. Court No. 34-2014-80001848-CU-WM-GDS.)

8

On appeal, we may take judicial notice of any matter specified in Evidence Code section 452, including court records and official acts of state agencies. (Evid. Code, § 452, subds. (c) & (d)(1); *Arce v. Kaiser Foundation Health Plan, Inc.* (2010) 181 Cal.App.4th 471, 482.) This rule is subject to the qualification that we generally do not take judicial notice of the truth of the matter asserted in such documents, and may decline to take judicial notice of matters not relevant to dispositive issues on appeal. (*Ibid.*)

The documents submitted by Capacity are relevant to whether GFL's action is barred by collateral estoppel principles, which, in turn, is relevant to whether the instant appeal is moot. (*Carson Citizens for Reform v. Kawagoe* (2009) 178 Cal.App.4th 357, 364 [" ' "[A]n action which originally was based upon a justiciable controversy cannot be maintained on appeal if all the questions have become moot by subsequent acts or events" ' "].) " 'To determine whether to preclude relitigation on collateral estoppel grounds, judicial notice may be taken of a prior judgment and other court records. [Citations]' [Citation.] [¶] . . . . ' "Whether a factual finding is true is a different question than whether the truth of that factual finding may or may not be subsequently litigated a second time. The doctrines of res judicata and collateral estoppel will, when they apply, serve to bar relitigation of a factual dispute even in those instances where the factual dispute was erroneously decided . . . ." ' " (*Hawkins v. SunTrust Bank* (2016) 246 Cal.App.4th 1387, 1393.)

We therefore grant Capacity's request for judicial notice. (Evid. Code, §§ 452, subds. (c) & (d)(1), 459, subds. (a) & (c).)

## IV. *Discussion*

### A. *Collateral Estoppel*

Collateral estoppel, or issue preclusion, "prohibits the relitigation of issues argued and decided in a previous case, even if the second suit raises different causes of action. [Citation.]" (*DKN Holdings LLC v. Faerber* (2015) 61 Cal.4th 813, 824.) Collateral estoppel applies "(1) after final adjudication (2) of an identical issue (3) actually litigated and necessarily decided in the first suit and (4) asserted against one who was a party in the first suit or one in privity with that party." (*Id*. at p. 825.)

9

The Board initially sustained GFL's protest to Capacity's proposed termination of its franchise, concluding there was no good cause for that termination within the meaning of sections 3060, subdivision (a)(2), and 3061. The Superior Court of Sacramento County issued a writ of mandamus directing the Board to vacate its decision and issue a new decision overruling GFL's protest, based on a finding that the Board "abused its discretion in concluding that Capacity failed to establish good cause to terminate the franchise agreement." As GFL acknowledges, the judgment issuing the writ is now final. Thus, there has now been a final determination in an action between the same parties that Capacity had good cause to terminate the franchise, and GFL would be collaterally estopped from seeking damages for the ultimate termination of its franchise without good cause.

However, we agree with GFL that the good cause determination does not render this appeal moot because it does not dispose entirely of its claim against Capacity. Section 3060, subdivision (a)(2), prohibits a franchisor from terminating a franchise while a protest is pending before the Board: "When a protest is filed, the board shall advise the franchisor that a timely protest has been filed, that a hearing is required pursuant to Section 3066, *and that the franchisor may not terminate or refuse to continue until the board makes its findings*." (Italics added.) Thus, regardless of whether a franchisor has good cause to terminate a franchise, it must refrain from doing so while the protest is pending.

GFL alleged in its complaint that Capacity "unilaterally terminated the franchise relationship between Capacity and GFL, and refused to recognize GFL as a Capacity dealer" shortly after GFL filed its protest on February 27, 2013. In support of its opposition to summary judgment, GFL submitted the declaration of Denise Rosen-Kendrick, the owner and president of GFL, stating: "On February 28, 2013, the day after GFL's protest was filed, [Capacity] terminated GFL as a Capacity dealer. From February 28, 2013 to April 10, 2014, [Capacity] refused to recognize [GFL] as a Capacity dealer, refused to sell or ship [GFL] Capacity parts or vehicles, and refused to give [GFL] referrals to parts." To the extent GFL's claim against Capacity is based on Capacity's

10

alleged de facto termination of the franchise during the pendency of its protest, it is not precluded by the Sacramento County Superior Court judgment. We therefore consider the appeal on its merits.

B. *Summary Judgment—General Principles and Standard of Review*

"A trial court will grant summary judgment where there is no triable issue of material fact and the moving party is entitled to judgment as a matter of law. A defendant moving for summary judgment must prove the action has no merit. [The defendant] does this by showing one or more elements of plaintiff's cause of action cannot be established or [demonstrating] a complete defense to the cause of action. At this point, plaintiff then bears the burden of showing a triable issue of material fact exists as to that cause of action or defense." (*Towns v. Davidson* (2007) 147 Cal.App.4th 461, 466.)

We review an order granting summary judgment under the de novo standard of review, considering "all the evidence set forth in the moving and opposition papers except that to which objections have been made and sustained." (*Guz v. Bechtel National, Inc.* (2000) 24 Cal.4th 317, 334.) "In performing our de novo review, we must view the evidence in a light favorable to plaintiff as the losing party [citation], liberally construing [its] evidentiary submission while strictly scrutinizing defendants' own showing, and resolving any evidentiary doubts or ambiguities in plaintiff's favor." (*Saelzler v. Advanced Group 400* (2001) 25 Cal.4th 763, 768 (*Saelzler*).) Questions of law and statutory construction are reviewed de novo. (*California Public Records Research, Inc. v. County of Yolo* (2016) 4 Cal.App.5th 150, 166.)

C. *Standing under section 11726*

As previously noted, section 11726 provides in relevant part, "Any licensee suffering pecuniary loss because of any willful failure by any other licensee to comply with any provision of Article 1 (commencing with Section 11700) or 3 (commencing with Section 1900) of Chapter 4 of Division 5 or Article 3 (commencing with Section 3052) of Chapter 6 of Division 2 or with any regulation adopted by the department or any rule adopted or decision rendered by the board under the authority vested in them may

11

recover damages and reasonable attorney fees therefor in any court of competent jurisdiction." The trial court ruled Capacity was entitled to summary judgment because it was undisputed GFL was not a "licensee" within the meaning of this section. We agree with GFL that its status as a non-licensee does not deprive it of standing.

Section 3050, subdivision (f), recognizes that notwithstanding the Board's jurisdiction to hear a protest under section 3060, "the courts have jurisdiction over all common law and statutory claims originally cognizable in the courts." Section 11726 provides for one such private statutory claim by authorizing the recovery of damages and attorney fees when there has been a willful violation of, among other things, section 11713.3. Thus, the " 'clear, understandable, unmistakable terms' " of section 11726 show that the Legislature intended to create a private statutory cause of action for willful violations of section 11713.3. (See *Lu v. Hawaiian Gardens Casino, Inc.* (2010) 50 Cal.4th 592, 596.)

Capacity argues that only persons or entities holding a motor vehicle dealer's license under section 11700 have standing to assert the private cause of action under section 11726. We disagree. Although section 11726, is couched in terms of actions between "licensees," that provision is "a remedial section . . . not a standing section." (*Fresno Motors, LLC v. Mercedes Benz USA, LLC* (9th Cir. 2014) 771 F.3d 1119, 1134 (*Fresno Motors*).) It creates a private cause of action for the failure to comply with various provisions of the Vehicle Code, as well as with any DMV regulation or decision or rule issued by the Board. Though it uses the term "licensee" to describe the parties to such an action, claims based on the statutes identified and incorporated into section 11726 will not invariably involve litigants holding a motor vehicle license.

For example, section 11713.3, subdivision (t), makes it unlawful for a manufacturer to "exercise a right of first refusal or other right requiring a franchisee . . . to sell, transfer, or assign to the franchisor, or to a nominee of the franchisor, all or a material part . . . of the franchised business unless . . . (6) [t]he franchisor shall reimburse the proposed transferee for expenses paid or incurred by the proposed transferee in evaluating . . . and negotiating the proposed transfer. . . ." In *Fresno Motors*, *supra*, 771

F.3d at page 1134, the court rejected a claim that because section 11726 is limited to licensees, a proposed transferee that was not licensed could not sue for a violation of section 11713.3, subdivision (t)(6). (*Id*. at pp. 1133–1134.) "[T]he plain language makes clear that it is the proposed transferee that has standing to sue." (*Id*. at p. 1134.)

In reaching this conclusion, the *Fresno Motors* court relied upon *Menke*, *supra*, 171 Cal.App.4th at page 1094, in which an automobile dealer and a prospective purchaser of the dealership sued the manufacturer after the manufacturer refused to approve the sale. They stated a statutory claim under section 11713.3, subdivision (e), which makes it unlawful and a violation of the Vehicle Code for any manufacturer "[t]o prevent, or attempt to prevent, a dealer from receiving fair and reasonable compensation for the value of the franchised business." (*Menke*, *supra*, 171 Cal.App.4th at p. 1093.)

Implicitly assuming the existence of a private cause of action under the statute, the court concluded the prospective purchaser lacked standing to pursue its claim because section 11713.3, subdivision (e), "protect[s] franchise owners against manufacturer conduct that would prevent the dealer 'from *receiving* fair and reasonable compensation for the value of the franchised business.' [Citation.] The statute says nothing about potential purchasers." (*Id*. at p. 1093.) It rejected an argument that because the prospective purchaser owned an unrelated dealership and was already a license holder under the Vehicle Code, it was entitled to bring a claim as a "licensee" under section 11726: "[Plaintiff] cannot transmute the accidental circumstance that it, among all possible purchasers, is already a licensee into standing contrary to the terms of subdivision (e). *To illustrate the fallacy of Menke's approach: assuming arguendo that the terms of [section 11713.3] subdivision (e) somehow embraced potential transferees as a protected class, it would defy reason to deny particular transferees a remedy simply because they are not licensees as specified in section 11726. []The more natural reading is, as the trial court correctly concluded, that section 11726 merely specifies the remedy available for violations of [section 11713.3] subdivision (e) and does not expand or restrict the scope of those entitled to sue under it* [footnote omitted]." (*Id*. at p. 1094, italics added.)

13

Read together, *Fresno Motors* and *Menke* stand for the proposition that when determining a plaintiff's standing to sue under section 11726, courts should look to the provision allegedly violated by the defendant and determine whether the plaintiff is a party the provision was intended to protect.[3] In *Fresno Motors*, the provision at issue (section 11713.3, subdivision (t)(6)) inured to the benefit of prospective dealership purchasers who are damaged by a manufacturer's exercise of the right of first refusal, and who by definition would not yet possess a license in connection with the dealership being sold. (*Fresno Motors*, *supra*, 771 F.3d at pages 1133–1134.) In *Menke*, the provision at issue (section 11713.3, subdivision (e)) was intended to benefit dealers/franchisees who are attempting to sell a franchise but are prevented from doing so by virtue of the manufacturer/franchisor's refusal to give consent. (*Menke*, *supra*, 171 Cal.App.4th at p. 1093–1094.) In neither case was the plaintiff's status as a licensee dispositive of its standing to proceed.

Section 11713.3, subdivision (l), is not limited to "licensees;" indeed, it does not use that term at all. Rather, section 11713.3, subdivision (l), governs the conduct of parties to a franchise agreement whose termination is subject to the protections of section 3060 et seq. Thus, section 11713.3, subdivision (l), is obviously designed to protect dealers/franchisees whose franchises have been terminated by a manufacturer/franchisor in violation of the procedures set forth in section 3060 et seq.

In the protest proceedings before the Board in this case, Capacity filed a motion to dismiss the protest in which it argued that the Board lacked jurisdiction because the Capacity product sold by GFL (the Trailer Jockey) was not subject to registration under

---

[3] Capacity notes that the language in *Menke* which we highlighted above is dicta. "This is the usual argument in such a situation. However, dicta that is well-reasoned can help to anchor a rule of law when it is subsequently decided." (*Estate of Fowler* (1982) 130 Cal.App.3d 831, 836.) Moreover, while *Fresno Motors* is a federal court of appeals decision and is not binding, we find its reasoning persuasive. (See *Finley v. Superior Court* (2000) 80 Cal.App.4th 1152, 1160.) "It is proper. . . to look to federal decisions interpreting California law where the reasoning is 'analytically sound.'" (*Vaquero v. Stoneledge Furniture, LLC* (2017) 9 Cal.App.5th 98, p. 110, fn. 9.)

the Vehicle Code. The Board denied the motion, finding the vehicles were subject to registration and that the written agreement between Capacity was a "franchise" agreement pursuant to section 331. The Superior Court affirmed this aspect of the Board's decision when it issued its decision (now final) on Capacity's petition for writ of mandate. As the franchisee in a franchise agreement over which the Board had jurisdiction, GFL is a party whom section 11713.3 was designed to protect.

Both section 11713.3 and section 11726 are part of a statutory scheme whose purpose is " ' "to avoid undue control of the independent new motor vehicle dealer by the vehicle manufacturer or distributor and to insure that dealers fulfill their obligations under their franchises and provide adequate and sufficient service to consumers generally." ' " (*Powerhouse*, *supra*, 221 Cal.App.4th at p. 877; see Stats. 1973, ch. 996, § 1.) Allowing a private cause of action under section 11713.3, subdivision (l), promotes these purposes whether or not the franchisee is licensed: (1) by giving the franchisee a remedy for unreasonable conduct by the franchisor, on whom it is dependent for its business; and (2) by providing an additional incentive for manufacturers/franchisors to comply with the statutorily-imposed notice and hearing requirements of section 3060 before terminating a franchise and jeopardizing the service the franchisee/dealer can provide to customers.

Like the court in *Menke*, we posit a hypothetical to illustrate why it would "defy reason" to conclude that a party's licensing status controlled its ability to bring an otherwise valid statutory claim under sections 11713.3 and 11726. (*Menke*, *supra*, 171 Cal.App.4th at page 1094.) Suppose that in this case, GFL was licensed by the DMV but Capacity was not. Section 11726 applies to "[a]ny licensee suffering pecuniary loss because of any willful failure *by any other licensee* to comply" with the enumerated statues, rules and decisions. Would Capacity be able to argue that because of its own lack of a license, GFL lacked standing to file an action against it?[4]

---

[4]    Indeed, it appears Capacity is not in fact a "licensee." In its written order denying Capacity's motion to dismiss GFL's protest, the Board noted that "Capacity is not currently licensed as a 'manufacturer' and asserts that no such license is required."

Unlike the prospective purchaser in *Menke*, *supra*, 171 Cal.App.4th 1088, GFL is a member of the class protected by the subdivision of section 11713.3 on which its cause of action is based. Because GFL has standing under section 11713.3, subdivision (l), its claim is not defeated by its status as non-licensee.

D. *"Termination" of Franchise and Pecuniary Harm*

Capacity asks us to affirm on the alternative ground that GFL cannot prove the elements necessary to prevail on a statutory claim under section 11713.3, subdivision (l). It argues (as it did below) that the undisputed evidence shows it did not "terminate" GFL as a dealer while the protest was pending and did not cause GFL to suffer "pecuniary harm" under section 11726. " 'On appeal, we are concerned with the validity of the summary judgment ruling, not its reasoning. [Citation.]' " (*Greystone Homes, Inc. v. Midtec, Inc.* (2008) 168 Cal.App.4th 1194, 1220.) We accordingly consider whether the judgment can be affirmed on the basis asserted.

In support of its claim that the evidence shows there was no termination of the franchise as a matter of law during the protest before the Board, Capacity relies on an email message from the president of GFL complaining that Capacity was "trying" to cancel it as a dealer by not allowing it to purchase parts (suggesting GFL had not *yet* been terminated). Capacity also argues that a "termination" of a franchise is "permanent by definition," rendering unmeritorious GFL's claim that it was temporarily terminated during the protest period. The cited email correspondence does not conclusively show there was no de facto termination during the protest period. Whether Capacity's conduct amounted to a de facto termination of the franchise is a question of fact not amenable to resolution on summary judgment, which can only be granted when the moving party's evidence "leave[s] no room for conflicting inferences." (*Planned Parenthood Golden Gate v. Garibaldi* (2003) 107 Cal.App.4th 345, 352.)

In support of its contention that GFL suffered no pecuniary harm as a result of the alleged de facto termination of the franchise, Capacity relies on GFL's response to Capacity's Request for Admissions (First Set), in which GFL admitted that (1) GFL purchased Capacity truck parts from sources other than Capacity between February 27,

16

2013, and March 28, 2014; (2) GFL received a 30% discount on Capacity parts from Capacity from the years 2012 to the present (May 2015); (3) GFL obtained Capacity truck parts from other sources during 2013 and 2014 at a discount equal to or greater than that offered by Capacity; and (4) as of February 27, 2013, GFL owed Capacity $39,571.22 for parts ordered from Capacity but not paid for by GFL. These responses do not demonstrate *as a matter of law* that Capacity suffered no pecuniary harm. The declaration submitted by GFL's owner and president in opposition to summary judgment stated: "While [GFL] may have been able to order and obtain **some** service parts from a third party at or below the cost it would have to pay for those same parts from [Capacity], this was not the case for every part in 2013-2014. [¶] . . . . [¶] [GFL] was averaging approximately $12,000 in profits for 2010 and 2011. In 2013—the year when [Capacity] terminated [GFL] as a Capacity dealer, and refused to sell or ship [GFL] parts or vehicles—[GFL]'s profits decreased substantially, to -$16,519. . . . It was not until the latter part of 2014, when [GFL] was able to start ordering parts and vehicles again, that [GFL]'s profits increased." Pecuniary harm (damages) is a disputed issue of material fact and summary judgment cannot be granted on this basis.

The order granting summary judgment must be reversed. We express no opinion as to the merits of GFL's statutory cause of action, concluding only that it is not barred for lack of standing and that triable issues of fact preclude summary judgment.[5]

## V. *Disposition*

The summary judgment is reversed and the case is remanded for further proceedings. Appellant shall recover its ordinary costs on appeal. (Cal. Rules of Court, rule 8.278(a)(1).)

---

[5] We note that at oral argument, counsel for Capacity cited section 11713.3, subdivision (q), which makes it unlawful for a manufacturer "[t]o sell vehicles to a person not licensed pursuant to this chapter for resale." Though this argument was not raised below or developed in the briefing on appeal, Capacity is free to assert subdivision (q) as an affirmative defense to GFL's claims to the extent it may apply.

_____

NEEDHAM, J.

We concur.

_____

JONES, P.J.

_____

SIMONS, J.

Filed 5/24/17

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| GUARANTEE FORK LIFT, INC., DBA GFL, INC.,<br><br>    Plaintiff and Appellant,<br><br>v.<br><br>CAPACITY OF TEXAS, INC.,<br><br>    Defendant and Respondent. | A147954<br><br>(Alameda County<br>Super. Ct. No. HG14736249)<br><br>**[ORDER CERTIFYING OPINION FOR FULL PUBLICATION]** |

BY THE COURT:

    The opinion in the above-entitled matter filed on May 2, 2017, was not certified for publication in the Official Reports. For good cause appearing, pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, the opinion is certified for publication.

Date_____          _____ P.J.

19

Superior Court of Alameda County, No. HG-14736249, Delbert C. Gee, Judge.

MLG Automotive Law, Jonathan A. Michaels, Kristen R. Rodriguez, and Kathryn J. Harvey for Plaintiff and Appellant,

Waits, Brownlee, Berger, Hoop and Johnston, Timothy R. Brownlee and Baker & Hostetler,  Maurice Sanchez for Defendant and Respondent.