Filed 1/27/26  Vo v. Le CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THOMAS VO,<br><br>Plaintiff, Cross-defendant and Appellant,<br><br>v.<br><br>JOHN LE,<br><br>Defendant, Cross-complainant and Respondent. | H051626<br>(Santa Clara County<br>Super. Ct. No. 21CH010046) |

Thomas Vo and John Le are neighbors.  In 2021, Vo obtained a civil harassment restraining order (CHRO) and prevailing party attorney fees against Le.  (See Code Civ. Proc., § 527.6.)[1]  At issue in this appeal by Vo is the trial court's next order granting Le's request for a mutual CHRO against Vo and awarding Le attorney fees.  Vo contends that insufficient evidence supports the order and the fee award was excessive.  We affirm.

## I.  BACKGROUND

Vo's and Le's properties are adjacent to each other and sit atop a hill, with Le's property at a higher elevation.  After relations between the neighbors escalated into physical violence, Vo obtained a CHRO against Le, which (among other things)

---

[1] Undesignated statutory references are to the Code of Civil Procedure. Section 527.6 permits a person suffering from harassment to seek "an order after hearing prohibiting" such harassment.  (§ 527.6, subd. (a)(1).)

prohibited Le from being within 50 yards of Vo's residence, person, and other real and personal property.[2]  The evidence supporting Vo's CHRO is not before us, but it is undisputed that Pleasant Vista Drive is Le's sole means of accessing his property and a part of that road crosses Vo's property.  Le has an easement that permits him to use a portion of Vo's property for ingress and egress.

Le filed his own request for a restraining order against Vo in September 2022, alleging that Vo, since obtaining the CHRO, had begun a campaign of harassment against Le by repeatedly trespassing on Le's property, recording Le on his cell phone, calling the police to falsely report Le for violations of the CHRO, blocking the easement, and shouting obscenities and "flipping [Le] off" each time Le passed by.  Le also asked the trial court to modify Vo's restraining order, contending that its stay-away provision placed Le in technical violation of the order even when on his own property.

Pending an evidentiary hearing, the trial court issued a temporary restraining order (TRO), which included a six-feet stay-away provision and the standard term requiring Vo to surrender firearms.  Vo did not surrender his five firearms until May 2023—nearly six months after he was served with the TRO and five days before the CHRO hearing commenced.

The matter proceeded to a contested hearing in May 2023, where both parties were represented by counsel.  Le and Vo testified, and a traffic safety expert and Le's two adult sons testified on Le's behalf.

## A.    *Le's Evidence In Support of CHRO*

Le testified that Vo began to harass him after obtaining the restraining order. Every morning when Le passed through Vo's property on his way to work, Vo stood in front of his house and recorded Le on his cell phone.  Every time Le brought out his

_____

[2] We grant Vo's request to judicially notice the fact of Le's prior appeal, which was dismissed on Le's request.  (Evid. Code, § 452, subd. (d).)

2

garbage cans for collection, Vo flipped Le off and told him to "get the 'F' off my property." When Vo's wife was present, she participated in the harassment as well. Vo repeatedly flipped Le off when Le drove by, walked on Le's property while admonishing Le to stay off his, and on one occasion, appeared to move Le's fence.

According to Le, Vo used a variety of items to block the easement in front of his home, making it difficult for emergency vehicles to access Le's property when needed. The first time emergency services attempted to access Le's property to tend to Le's mother-in-law, it was delayed because Vo had two cars parked on the hairpin turn portion of the easement. When Le left a note on Vo's car asking Vo to park elsewhere, Vo responded via text message: "This is your first and last warning. Do not EVER set foot on my property, except to get to your property." Vo separately texted another neighbor regarding Le, referring to him as "a trespasser" and telling the neighbor he would "deal with [him] when he come[s] back." Vo continued placing cars, woodpiles, traffic cones, and a metal crate on the easement, causing emergency services to be delayed on two other occasions. Video footage also showed Vo partially blocking Le's car as Le attempted to drive through the easement on one occasion.

Vo placed a metal crate in front of Le's property, with a sign inside asking, "How is your $$$$ laundering biz going?" According to Le, the sign went up around the time Le obtained the TRO against Vo and stayed up for "[a]t least five months" until a few months before the evidentiary hearing. Vo repeatedly called the police to falsely report Le for violations of the restraining order. Le estimated that from the time Vo got the restraining order, he had called the police on Le "more than [10] times."

Christian Engelmann, accepted by the trial court as an expert in traffic safety, testified that he observed a pile of firewood, a metal cage, and a parked car in the easement leading to Le's property. Engelmann opined that Vo's placement of these objects "closer to the middle of the road versus near the edge of the road" was done "intentionally to harm [Le]."

3

Le's two adult sons, Johnny and Johnson Le, lived with Le and testified about the deterioration of the relationship between the two neighbors. Both sons opined that Vo instigated the hostility between the men and expressed ongoing concern for their father's safety.

**B.** *Vo's Evidence*

Vo denied harassing Le and testified it was Le who initiated the hostility between the neighbors by telling Vo " '[t]his is war' " and physically attacking him. Vo denied blocking the easement and denied that emergency vehicles had trouble accessing Le's property; Vo testified that he saw wide-bodied delivery trucks go up and down the road every day. Vo testified that the fire department had inspected the portion of Pleasant Vista Drive crossing his property and found it in compliance with the fire code standards for access and safety. But Vo was impeached with video footage showing him moving a parked car off the hairpin turn portion of the easement about half an hour before the fire inspection and then moving it back after the inspection had ended.

Vo denied any harassing purpose for placing the metal crate and sign in front of Le's property and insisted the placement served as "a safety factor" to provide pedestrians "a barrier" against out-of-control vehicles. Vo testified that it was his wife (then fiancée) who made the sign asking after "your $$$$ laundering biz" and that Vo kept the sign up to "make her happy," conceding he should have taken it down earlier. Vo asserted that "[m]oney laundering . . . is very common knowledge within the Vietnamese community." Vo admitted he once "just casually flipped [Le] off" in responding to Le honking his car horn and displaying a sign telling Vo to "[g]et a life" or "[g]et a job." Vo admitted kicking over Le's trash cans but claimed a right to do so because they were encroaching upon his property. Vo explained his belated surrender of his firearms because, like "the average person," he read only "the first two pages" of the TRO.

4

## C.    *Trial Court's Order*

The trial court granted Le's request for a CHRO, determining that Vo was engaging in annoying and harassing conduct toward Le.  The court did not find improper Vo's reporting to the police alleged violations of the CHRO but found that Vo's actions since prevailing on his own CHRO request "seem to be an attempt to either retaliate against Le or trap him into violating the [restraining order]."  The court relied on behavior including, without limitation:  (1) repeatedly flipping off Le as Le passed Vo to access Le's home, (2) knowingly placing the "$$$$ laundering biz" sign at the entrance to the gate where Le and any of his visitors must pass, (3) kicking over Le's trash cans in an angry and aggressive manner, and (4) appearing to refuse to get out of Le's way as Le approaches his own home, despite the TRO's six-foot distance order protecting Le from Vo.  These actions are "not only annoying and harassing, but for those that occurred after the TRO . . . they additionally violate the terms of that TRO."

Also, while the court emphasized it was not adjudicating the easement, it found that Vo demonstrated a "willingness to create barriers for safe passage to Le's property by emergency vehicles" and that this conduct was "at least harassing, and potentially harmful and dangerous."  Based on the video evidence, the court disbelieved Vo's testimony that he was complying with the requirements conveyed by the fire department in inspecting the property.  The court also rejected Vo's claim that he had not initially read the TRO against him and thus was unaware he was required to surrender any firearms in his possession.

The court concluded that mutual restraining orders were appropriate.  The court also granted Le's request to modify Vo's existing restraining order, deleting the term that required Le to stay at least 50 yards from Vo's residence and other properties and clarifying that Le is "permitted to be anywhere on his property and doing so would not be a violation of the stay[-]away provision" of the restraining order.

5

**D.**     *Attorney Fees Request and Order*

Le moved for $38,962.91 in prevailing party attorney fees and costs under section 527.6, subdivision (s), based on rates of $650 per hour for attorney time and $400 per hour for paralegal time. Le's counsel submitted a declaration in support of the fees motion, setting forth the following: (1) that counsel's experience includes 15 years as attorney, including eight years as partner; (2) that counsel has handled cases on a range of topics, including civil harassment; (3) that counsel has obtained favorable judgments in both state and federal courts; and (4) that counsel has published in and taught several areas of law, including remedies, discovery, and evidence. Considering his experience, counsel attested that his hourly rate of $650 is reasonable.

In addition, Le's counsel cited the trial court's prior award to Vo of prevailing party attorney fees in the amount of $20,813.41 for what counsel characterized as "a much simpler and shorter case." Counsel noted that in 2021 and 2013, the court had awarded him fees at an hourly rate of $550 and $425, respectively. Counsel provided the court with an unpublished federal district court decision noting that in the Bay Area, " 'reasonable hourly rates for partners range from $560 to $800.' "

At the hearing, counsel argued that his hourly rate is reasonable in the context of this case because of its "complexity," which included "years of fighting amongst [Le and Vo]," the parties' "documentation of every grievance, and the[ir] disputes over the interpretation" of the stay-away provision of the original CHRO, which the trial court modified. Counsel represented that the rates set forth in his declaration "are rates [he] charge[s] in other restraining order actions," and that he had been "awarded by this [c]ourt rates that adjusted for inflation . . . would be commensurate" with the rates requested here.

Vo opposed the fees motion and separately moved to vacate the order granting the CHRO. Vo did not dispute that Le is a prevailing party under the statute but contended that the requested fees are excessive. Vo's counsel submitted a declaration in the trial

court contending that the market rate for similar CHRO cases is $250 to $375 per hour, but Vo did not include that declaration as a part of the record on appeal. Vo asked the court to deny attorney fees altogether, or at least, limit the fees award to no more than $10,000.

The trial court declined to vacate its order granting the CHRO but agreed to extend Vo's restraining order so that the two orders are coextensive and set to expire at the same time. As to fees, the court noted that Vo's claim that the average billing rate in the county as $250 to $375 is "probably a fair assessment" but indicated that in terms of the time and presentation, the court did not believe the case to be "necessarily habit." Rather, this was a "complicated civil harassment case" with the quality of lawyering "above and beyond what [the court] would expect in a civil harassment case." At the same time, the court acknowledged that even a complicated civil harassment case is not "complex litigation" and considered whether to reduce the fees in accordance with the nature of the case.

Ultimately, the court determined that counsel's rate was reasonable given the complexity of the case, the duration of the dispute, and the likelihood that it will "continue to go on." After "thoroughly look[ing] at the detailed spreadsheet" counsel provided, the court also found the time counsel spent preparing the case for trial to be "not . . . unreasonable." However, the court reduced the fees award by $5,250 to account for paralegal and expert consultation fees the court found to be duplicative or unnecessary. The court awarded fees in the amount of $33,712.91.

Vo timely appealed.

## II. DISCUSSION

Vo contends there is insufficient evidence to support the restraining order, arguing that Le failed to present evidence that Vo's conduct was either harassing or likely to recur. Vo next argues Le is not entitled to attorney fees because he is not a prevailing party and the requested fees are excessive.

7

**A.** *The Restraining Order*

A court may enjoin a person from harassing another, on "clear and convincing evidence that unlawful harassment exists." (§ 527.6, subd. (i)(1); *E.G. v. M.L.* (2024) 105 Cal.App.5th 688, 698 (*E.G.*).) The " ' " 'clear and convincing' " ' standard ' "requires a finding of high probability" ' of unlawful harassment." (*E.G.*, at p. 698.) "[A] past act of harassment is insufficient to justify a restraining order." (*Id*. at p. 706.) Because the statute requires " 'clear and convincing evidence that unlawful harassment *exists*,' [citation], 'not that it existed in the past,' " " '[a]n injunction is authorized only when it appears that wrongful acts are likely to recur.' " (*Ibid.*)

Harassment under the statute is "a knowing and willful course of conduct directed at a specific person that seriously alarms, annoys, or harasses the person, and that serves no legitimate purpose." (§ 527.6, subd. (b)(3).) A "course of conduct," in turn, is "a pattern of conduct composed of a series of acts over a period of time, however short, evidencing a continuity of purpose." (§ 527.6, subd. (b)(1).) "Constitutionally protected activity is not included within the meaning of 'course of conduct.' " (*Ibid*.)

**1.** *Standard of Review*

We review the trial court's decision to grant a restraining order for " ' "whether the findings (express and implied) that support the trial court's entry of the restraining order are justified by substantial evidence in the record." ' " (*E.G.*, *supra*, 105 Cal.App.5th at pp. 698–699.) We do not reweigh the evidence but " 'view the record in the light most favorable to the prevailing party below and give appropriate deference to how the trier of fact may have evaluated the credibility of witnesses, resolved conflicts in the evidence, and drawn reasonable inferences from the evidence.' " (*Id*. at p. 699.) Whether the facts found by the court constitute civil harassment under section 527.6 is a question of law we review de novo. (*Ibid*.)

8

## 2. *Sufficient Evidence of Unlawful Harassment*

Viewing the record in a light most favorable to Le, substantial evidence supports the trial court's finding that Vo engaged in a course of conduct that "seriously alarm[ed], annoy[ed], or harasse[d]" Le. (§ 527.6, subd. (b)(3).) Evidence of this course of conduct included Le's testimony that (1) Vo recorded Le's movements from the front of his home on multiple occasions; (2) Vo repeatedly obstructed the easement that represented the only road Le, his family, and his visitors can use to get to and from Le's property; and (3) that Vo's obstruction of the easement thrice delayed emergency service personnel from reaching his home. Le also presented video footage of Vo himself blocking Le's path as Le attempted to drive through the easement on one occasion, and the trial court credited Le's testimony in rejecting Vo's denial that he blocked Le's access. Our review of the video reveals no error in the court's finding. In sum, there is substantial evidence to support the trial court's finding that Vo's course of conduct qualifies as one that "seriously alarms, annoys, or harasses" Le.

Vo does not necessarily dispute these incidents (many of which were captured on video) but argues that each time it was Le who instigated the conflict by "purposely antagonizing [Vo]."[3] But on appeal from a grant of a CHRO, we do not reweigh the evidence, and we defer to the trial court's credibility determinations. (*E.G.*, *supra*, 105 Cal.App.5th at p. 699.) Here, Vo testified and had ample opportunity to present his narrative as to who started what and why. In granting Le's request, the trial court necessarily disbelieved Vo's account that Le was the "instigator" and "antagonizer,"

---

[3] Vo asks us to take judicial notice of "the documents filed in" four unrelated lawsuits that Le and Le's family members had filed against him in the Santa Clara County Superior Court. Because Vo has not shown Le's lawsuits to relate to the dispositive issues on appeal, we would deny Vo's request for judicial notice of filings in those lawsuits even if Vo had properly included them with his request. (*Guarantee Forklift, Inc. v. Capacity of Texas, Inc.* (2017) 11 Cal.App.5th 1066, 1075.)

while Vo represented the "mild" and "patient" man who refused to take the bait. We see no cause to reassess that implicit finding.

Finally, Vo argues that his flipping off Le and inquiring into Le's "$$$$ laundering biz" was expressive activity protected by the First Amendment. Of course, "[c]onstitutionally protected activity" is not harassing activity (§ 527.6, subd. (b)(1)), but Vo has not shown that his activities here qualify for First Amendment protection. While " '[s]peech concerning public affairs . . . is the essence of self-government,' " " 'speech on matters of purely private concern'—while 'not totally unprotected,' . . . 'is of less First Amendment concern.' " (*Brekke v. Wills* (2005) 125 Cal.App.4th 1400, 1409 (*Brekke*).) "When such speech—for example, as in defamation or the intentional infliction of emotional distress—causes damage, civil sanctions may be imposed because ' "[t]here is no threat to the free and robust debate of public issues; there is no potential interference with a meaningful dialogue of ideas concerning self-government; and there is no threat of liability causing a reaction of self-censorship by the press." ' " (*Ibid*.)

Here, Vo's purported communicative activities were "between purely private parties, about purely private parties, on matters of purely private interest." (*Brekke*, *supra*, 125 Cal.App.4th at p. 1409.) And there is no evidence that Vo, when engaging in these activities, was involving Le in a " ' "robust debate" ' " about the role of profanity in our society or attempting to engage Le, his sons, or his visitors in a " ' "meaningful dialogue" ' " about the pros and cons of our money laundering law. As such, his activities are not constitutionally protected. (*Ibid*.; see also *E.G.*, *supra*, 105 Cal.App.5th at p. 704 [holding that social media post is not protected because it was defamatory, unsubstantiated, and based on conjecture].)

### 3.     *Likelihood of Recurrence*

Vo next argues that even with substantial evidence of harassment, the trial court erred by failing to find a likelihood of its recurrence, and that Vo's voluntary cessation of the offending conduct months before the CHRO hearing precludes such a finding. In

10

assessing whether harassment is likely to recur, the court was free to " 'consider any evidence showing a likelihood of future harassment, including evidence of conduct that might not itself constitute harassment.' " (*Harris v. Stampolis* (2016) 248 Cal.App.4th 484, 501.) We infer from the court's issuance of a restraining order that the court considered the order necessary to prevent what it otherwise considered a "reasonably probable" recurrence of harassment. (*Id*. at p. 500 ["presum[ing] that the trial court followed the applicable law and understood that it was required to find that future harm was reasonably probable"].) Substantial evidence supports this implied finding: The trial court heard evidence that Vo persisted in harassing Le even *after* Le had obtained a TRO against him. And as neighboring property owners, Vo and Le lack the option of avoiding or ignoring each other, particularly when Le cannot access his home without using the easement on Vo's property. No greater showing was required. (Compare *Scripps Health v. Marin* (1999) 72 Cal.App.4th 324, 327–329 [insufficient evidence of recurrence when defendant's conduct was limited to single incident, after which he honored a voluntary promise to stay away from plaintiff hospital] with *Harris*, at pp. 489–494, 500–501 [sufficient evidence of recurrence when repeated contact between parties likely and defendant had disregarded prior admonitions to stay away].)

**B.      *Attorney Fees***

We review for abuse of discretion Vo's challenge to the trial court's award of attorney fees to Le. (See *Heritage Pacific Financial, LLC v. Monroy* (2013) 215 Cal.App.4th 972, 1004 (*Heritage*).) " 'The "experienced trial judge is the best judge of the value of professional services rendered in [their] court, and while [their] judgment is of course subject to review, it will not be disturbed unless the appellate court is convinced that it is clearly wrong.["] ' " (*PLCM Group, Inc. v. Drexler* (2000) 22 Cal.4th 1084, 1095 (*PLCM Group*).) In the trial court, Vo never disputed that Le was a prevailing party under section 527.6, subdivision (s), so we reject as forfeited his contrary claim on appeal. (See *Gonzalez v. County of Los Angeles* (2004)

11

122 Cal.App.4th 1124, 1131 [holding that " ' "a reviewing court will ordinarily not consider claims made for the first time on appeal which could have been but were not presented to the trial court" ' "].)[4]  Although he preserved his alternative contention that the fee award is excessive, he shows no abuse of discretion.

" '[T]he fee setting inquiry in California ordinarily begins with the "lodestar," i.e., the number of hours reasonably expended multiplied by the reasonable hourly rate.' " (*Heritage*, *supra*, 215 Cal.App.4th at p. 1004.)  " 'The reasonable hourly rate is that prevailing in the community for similar work.' " (*Ibid*.)  " 'The lodestar figure may then be adjusted, based on consideration of factors specific to the case, in order to fix the fee at the fair market value for the legal services provided.' " (*Ibid*.)  "Such an approach anchors the trial court's analysis to an objective determination of the value of the attorney's services, ensuring that the amount awarded is not arbitrary." (*PLCM Group*, *supra,* 22 Cal.4th at p. 1095.)

Vo does not dispute the reasonableness of the time Le's attorney expended, only the reasonableness of counsel's hourly rate.  To determine hourly rates, " 'court[s] must look to the "prevailing market rates in the relevant community." ' " (*Nishiki v. Danko Meredith*, *P.C.* (2018) 25 Cal.App.5th 883, 898 *(Nishiki)*.)  The affidavit of the applicant attorney and other attorneys regarding prevailing fees in the community are satisfactory evidence of the prevailing market rate.  (See *Kerkeles v. City of San Jose* (2015) 243 Cal.App.4th 88, 105, citing *Chaudhry v. City of Los Angeles* (9th Cir. 2014) 751 F.3d 1096, 1110; see also *Heritage*, *supra*, 215 Cal.App.4th at p. 1009 [holding that

---

[4] Vo instead argued that the trial court should exercise its discretion to deny Le fees despite Le's having prevailed.  And even if not forfeited, Vo's appellate challenge to the prevailing-party determination overlooks the essential goal of Le's CHRO request— protection from Vo's harassment and modification of Vo's restraining order to permit Le's presence on his own property.  (See *Elster v. Friedman* (1989) 211 Cal.App.3d 1439, 1443 [defining a prevailing plaintiff as one who "gets most or all of what he wanted by filing the action"].)

affidavits of plaintiff's attorney and other attorneys regarding prevailing fees " 'are satisfactory evidence of the prevailing market rate' "].)  "If a fee applicant presents such evidence, the opposing party ' "has a burden of rebuttal that requires submission of evidence . . . challenging the accuracy and reasonableness of the . . . facts asserted by the prevailing party in its submitted affidavits." ' " *(Kerkeles*, at p. 105.)

In the trial court, Le's counsel submitted a declaration attesting to the reasonableness of his hourly rate, and at the hearing, represented that he charged these rates in similar CHRO cases, and that the court had awarded him comparable rates (adjusted for inflation) in the past.  The trial court ultimately accepted counsel's hourly rate as reasonable based on counsel's enumerated experience, and the court's own findings about the case's complexity and counsel's "above and beyond" lawyering skills. We cannot say this determination is "clearly wrong."  (*PLCM Group*, *supra*, 22 Cal.4th at p. 1096 [holding that in determining fair market value, the trial court may consider " 'a number of factors, including the nature of the litigation, its difficulty, the amount involved, the skill required in its handling, the skill employed, the attention given, the success or failure, and other circumstances in the case' "]; *Nishiki*, *supra*, 25 Cal.App.5th at p. 898 [explaining that the " 'trial court is in the best position to value the services rendered by the attorneys in his or her courtroom [citation], and this includes the determination of the hourly rate that will be used in the lodestar calculus' "].)

## III.   DISPOSITION

The judgment is affirmed.  Costs on appeal are awarded to Le.  (Cal. Rules of Court, rule 8.278(a)(2).)

13

_____

LIE, J.

WE CONCUR:

_____

GREENWOOD, P. J.

_____

GROVER, J.

*Vo v. Le*
H051626