Filed 8/27/24  City of Los Angeles v. Great Basin Unified Air Pollution Control Dist. CA3

# NOT TO BE PUBLISHED

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| CITY OF LOS ANGELES, | C098351 |
| Plaintiff and Respondent, | (Super. Ct. No. 34-2013-80001451-CU-WM-GDS) |
| v. | |
| GREAT BASIN UNIFIED AIR POLLUTION CONTROL DISTRICT, | |
| Defendant and Appellant. | |

This case arises out of a longstanding and ongoing dispute between plaintiff City of Los Angeles (City) and defendant Great Basin Unified Air Pollution Control District (District), which is responsible for requiring the City to undertake "reasonable measures . . . to mitigate the air quality impacts" of its water diversion activities.  (Health & Saf.

1

Code, § 42316.)[1]  The parties' dispute involves the District's efforts to require the City to implement air pollution control measures at the Owens Lake bed, which is situated between the towns of Lone Pine and Olancha in Inyo County.  The City had used Owens Lake as a water source for many years, causing large parts of the lakebed to become exposed, and resulting in dry saline soils and crusts that became the source of wind-borne dust during significant wind events.

In 2014, the parties entered into a stipulated judgment (2014 judgment or stipulated judgment) to resolve the City's various challenges to District orders.  Among other provisions, the 2014 judgment provided for a procedure by which ordered dust control measures could be deferred, and then reordered for control, in areas where significant Tribal cultural resources had been found.  The 2014 judgment authorized the parties to bring motions in Sacramento County Superior Court to challenge conduct violating the terms of the judgment or to enforce its terms.

In 2021, the District issued an order (2021 District order) requiring the City to implement dust control measures in the Sibi Patsiata-wae-tü area, a five-acre area in Owens Lake that had previously been deferred, but that the District was reordering for control.

The City filed a motion to enforce the 2014 judgment, arguing that the District's order did not comply with the terms of the judgment because it ordered controls not authorized by the 2014 judgment.  The trial court denied the City's motion (first ruling), concluding in part that the 2014 judgment was unenforceable as to the Sibi Patsiata-wae-tü area because the parties had not agreed about what dust controls the District could order in areas that had been deferred and then reordered for control.

---

[1]  Further undesignated statutory references are to the Health and Safety Code.

Several months after the trial court's first ruling, and due to the City's continued refusal to comply with the terms of the 2021 District order, the District filed its own motion to enforce the 2014 judgment. That motion raised issues the trial court had addressed in its first ruling, including issues the court concluded it could not address based on the other conclusions reached in that ruling. Accordingly, the trial court denied the District's motion (second ruling), referring to and summarizing the reasoning and conclusions it reached in its first ruling.

The District appeals from the trial court's second ruling. However, we conclude that the District's motion, denied in the second ruling, is properly construed as a motion for reconsideration. As such, its denial is not appealable. Accordingly, we dismiss the District's appeal as an appeal from a nonappealable order.

## FACTS AND PROCEEDINGS

*Factual Background*

Under the federal Clean Air Act (42 U.S.C. § 7401 et seq.), the United States Environmental Protection Agency (EPA) is charged with identifying air pollutants and setting National Ambient Air Quality Standards, identifying areas that do not meet those standards, and directing the creation of state implementation plans (implementation plans) to obtain compliance with the standards. (42 U.S.C. § 7410.) The California Air Resources Board (Board) is responsible for meeting air quality standards through 35 air pollution control districts (Health & Saf. Code, § 39500), of which the District is one (*id.*, §§ 40000 *et seq.*).

The District is responsible for requiring air pollution controls from the Owens Lake bed. In 1983, the Legislature enacted section 42316, which authorized the District to require the City to undertake "reasonable measures . . . to mitigate the air quality impacts of its activities in the production, diversion, storage, or conveyance of water and may require the city to pay, on an annual basis, reasonable fees, based on an estimate of the actual costs to the district of its activities associated with the development of the

3

mitigation measures and related air quality analysis with respect to those activities of the city." (§ 42316, subd. (a).)  Subdivision (b) of section 42316 provides that the City "may appeal any measures or fees imposed by the district to the [Board] within 30 days of the adoption of the measures or fees."

In 1987, the EPA determined that the Owens Valley Planning Area, which contains Owens Lake, did not meet federal air quality standards for particulate matter less than 10 microns in diameter,[2] a designated pollutant under the Clean Air Act.  In 1993, the EPA classified the area as a "serious nonattainment area" for such particulate matter.

The City subsequently implemented dust control measures at the Owens Lake bed pursuant to various implementation plans, supplemental control requirements determinations (supplemental determinations), and a settlement agreement between the parties to resolve a dispute over a 2005 order issued by the District for additional air pollution controls.  In 2011 and 2012, the District issued supplemental determinations requiring the City to install additional dust control measures on approximately 3.62 square miles of dried Owens Lake bed.  These were known as the phase 9 and phase 10 dust control areas.

The City appealed the 2011 supplemental determination to the Board, and after the Board affirmed, it petitioned for writ of mandate in the Los Angeles County Superior Court.  That action was transferred to the Sacramento County Superior Court.  The City also appealed the 2012 supplemental determination to the Board, which remained pending at the time of the 2014 judgment, to which we now turn.

---

[2] This particulate matter is known as "$PM_{10}$."  (See, e.g., 40 C.F.R. § 50.6 (2006).) Pursuant to the federal standard, such particulate matter must not exceed 150 micrograms per cubic meter during a 24-hour period more than one time per calendar year, averaged over three years.  (40 C.F.R. § 50.6(a) (2006).)  Under California's standard, concentrations may not exceed 50 micrograms per cubic meter over a 24-hour period. (Cal. Code Regs., tit. 17, § 70200.)

*The 2014 Judgment*

In 2014, before the trial court issued its final ruling and order on the City's writ petition, the parties entered into a stipulated judgment to resolve their pending disputes.

Paragraphs 2 and 3 of the 2014 judgment required the City to complete previously ordered dust control projects, and it authorized the District to order dust controls on a limited amount of additional Owens Lake bed area. Paragraph 2.A required the City to "construct a dust control project to complete the Phase 9 and Phase 10 dust controls" by installing "best available control measures" --defined to include "shallow flooding," "managed vegetation," and "gravel cover"--bringing the total area of the City's dust controls on the Owens Lake bed to 48.6 square miles.[3] Paragraph 15 provided for daily penalties to be assessed for each missed dust control measure completion deadline set forth in paragraph 2.A.

Paragraph 3.A authorized the District, after January 1, 2016, to order the City to implement best available control measures on up to 4.8 square miles of Owens Lake bed that had not been previously ordered for control (contingency measures), which would bring the total area of the Owens Lake bed under dust control to 53.4 square miles.

In paragraph 2.B, the parties agreed to a procedure for deferring dust control projects in areas containing significant Tribal cultural resources (cultural resources area). It provided that the City "may submit an application to the [air pollution control officer] to approve modifications to the City's proposed project or measures on certain [cultural resources areas]."[4] It then required the District to consider and decide the City's

---

[3] Paragraph 2.E required the City to operate dust controls with approved best available control measures upon completing the phase 9/10 project.

[4] The air pollution control officer was employed by the District and worked to plan, design, implement, and manage air pollution research and control projects for the Owens Lake bed. He was also responsible for enforcing applicable air pollution control laws within the District.

5

application under procedures contained in 2013 Stipulated Abatement Order No. 130819-01 (2013 abatement order). That abatement order, which concerned deferral procedures for another phase of the Owens Lake bed dust control project, established a task force to make nonbinding recommendations for the best course of action and timing for treatment of areas with cultural resources, and a process for deferring controls while the task force performed its work and for reordering controls by the District after considering the task force's recommendations.[5]

The 2014 judgment also included what the District refers to as the parties' " 'grand bargain.' " In paragraph 3.B, the District agreed that, aside from the contingency measures identified in paragraph 3.A, and any areas "re-ordered for control under Paragraph 2.B of this Judgment, the District shall not issue any further orders for mitigation measures to the City under Section 42316 or any other law . . . requiring the City to control windblown dust emissions . . . from any areas on the dried Owens Lake Bed beyond the combined 53.4 square miles."

In exchange for limits on the area of the Owens Lake bed that the District could order for controls, paragraph 3.A provided in part: "[T]he City shall not appeal or contest the [air pollution control officer's] order for dust controls included in the combined 53.4 square miles now or in the future in any administrative or judicial forum, under any law, statute or legal theory whatsoever including Section 42316." Similarly, under paragraph 13.A: "The Parties stipulate and agree that all terms in the Stipulated Judgment are valid and reasonable under Section 42316 and under any and all other laws. The City waives

---

[5] Paragraph 3.A clarified that areas "deferred for controls under the procedures in Paragraph 2.B because of the presence of significant cultural resources, then re-ordered for controls per those procedures," were not contingency measures described in that paragraph. As we will discuss in greater detail *post*, the parties disagree about what dust control measures the District is authorized to order the City to implement after an area has been deferred and then reordered for control.

any challenge to the terms of this Stipulated Judgment and shall not now or in the future challenge or oppose the terms of this Stipulated Judgment in any administrative or judicial forum, under any law, statute or legal theory whatsoever including but limited to Section 42316."[6]

Finally, the 2014 judgment stated that the Sacramento County Superior Court retained jurisdiction over the judgment, including the enforcement of its terms, and authorized either party to file a motion to show a violation of or to enforce it. The parties agreed, "the rights and remedies provided in this Stipulated Judgment shall be the sole and exclusive rights and remedies surviving as between and among the Parties hereto relating to the subject matter of this Stipulated Judgment."

*2021 District Order*

The Sibi Patsiata-wae-tü area is an approximate five-acre area located within the 53.4 square miles of Owens Lake that had been designated for dust control measures, partially under phases 9 and 10, and partially under a previous dust control phase.[7] After cultural resources were identified in the area, the District formed the task force under the 2013 abatement order, which recommended that the area be deferred for controls with continued monitoring. In January 2018, the District approved the deferral and continued monitoring for the portions of the Sibi Patsiata-wae-tü area designated for dust control measures under phase 9 and 10.[8] In approving the deferral, the District clarified that it

---

[6] It appears that the parties unintentionally omitted the word "not" in that provision, such that the sentence would have read, ". . . under any law, statute, or legal theory whatsoever including but *not* limited to Section 42316."

[7] According to Phillip Kiddoo, the Air Pollution Control Officer for the District, Owens Lake is known as Patsiata in the Paiute and Shoshone languages.

[8] It approved deferral of the portion that had been ordered under a previous phase in 2015.

7

would issue a new order for the City to implement dust controls if it determined that the phase 9/10 portion of the Sibi Patsiata-wae-tü area was causing dust emissions exceeding air quality standards. The District noted that the new order "may include the measures recommended by the Tribes, or new measures that are considerate of the environmental sensitivity of these areas, the need to protect air quality, and the need to conserve water resources."

In 2021, the task force recommended dust control treatment in the Sibi Patsiata-wae-tü area involving a "vegetation enhancement project." On July 1, 2021, the District issued the 2021 District order to implement dust control mitigation in the Sibi Patsiata-wae-tü area that was consistent with the task force's recommendation. The City did not appeal the 2021 District order to the Board under section 42316.

*The City's Refusal to Comply with the 2021 District Order*

In August 2021, the City wrote in a letter to the District that it would not begin work on or undertake any project under the 2021 District order until the District addressed certain specified issues. In December 2021, the District issued a notice to comply with its order, and in January 2022, it issued a notice of violation for the City's failure to comply with the 2021 District order. The notice of violation asserted that the City's actions "violate the letter and spirit of the 2014 Stipulated Judgment."

On March 3, 2022, the City responded that the 2021 District order, the notice to comply, and the notice of violation conflicted with the rules and procedures set forth in the 2014 judgment, and requested that the District withdraw the 2021 District order and rescind the notice of violation.

On March 9, the District issued an order to pay the agreed upon penalties provided for in the 2014 judgment, and it invited the City to meet and confer in an attempt to resolve the dispute before it filed a motion to enforce that judgment.

8

*The City's Motion to Enforce the 2014 Judgment*

On April 6, 2022, the City filed a motion to enforce the 2014 judgment, requesting that the trial court determine the 2021 District order was unenforceable under the 2014 judgment and that the imposition of included penalties was invalid. The City argued in part that the District had failed to follow required procedures for reordering for controls an area that had been deferred, and the District could not order it to implement dust controls on deferred areas. Additionally, it asserted that as to the phase 9/10 areas, the District was authorized to require the installation of only best available control measures as defined in the 2014 judgment, and areas that were deferred and then reordered for control reverted to their status as phase 9/10 areas. According to the City, the 2021 District order violated the 2014 judgment because it ordered a vegetation enhancement project that was not a best available control measure. Finally, the City argued the District's order to pay was invalid because the City did not violate any of the provisions in the 2014 judgment supporting civil penalties.

The District responded that it appropriately developed procedures for reordering controls on areas that had been deferred, and reordered controls as part of the phase 9/10 project under paragraph 2 of the 2014 judgment. It also argued that it was not required to order only best available control measures. It pointed to paragraph 9 of the 2014 judgment, which directed it to "incorporate cultural and biological resource protection and mitigation into dust control measure to the extent feasible," and it asserted that none of the current best available control measures were conducive to protection of cultural resources. Additionally, paragraph 2.B recognized that it was authorized to "approve modifications to the City's proposed project or measures on certain areas that are determined to contain significant cultural resources," and the City had recognized with respect to a previous phase that sensitive areas "may require 'modified-[best available control measures], or alternative non-[best available control measures] controls.' "

9

The District further argued that for areas that were deferred and then reordered for control under paragraph 2.B of the 2014 judgment, the task force could make nonbinding recommendations on the dust control measures to be applied to the area, and then the District could exercise its discretion in ordering the City to implement the recommended measures "as 'reasonable measures' under Section 42316, subdivision [(a)]." It added: "The City does not have the ability to choose which dust control measures it wishes to employ under [paragraph] 2.B. This allows the selection of a more sensitive way to implement dust controls in those sensitive areas."[9]

As to agreed-upon penalties, the District argued such penalties were proper under section 42402.2, which authorized civil penalties for violations of District orders, and under the 2014 judgment.

The parties also disagreed on whether the City had waived its challenges to the 2021 District order. The District argued that the City had failed to appeal the order to the Board as required by section 42316, and the City waived all challenges to District orders by agreeing to the 2014 judgment. The City responded that no appeal under section 42316 was required because its appeal procedures did not apply to dust control measures ordered pursuant to the 2014 judgment. It also argued that it did not waive its right to bring its motion by signing the 2014 judgment because the District failed to properly follow procedures required to reorder controls, and therefore the Sibi Patsiata-wae-tü area was not a dust control area subject to the terms of the 2014 judgment.

*The Trial Court's First Ruling*

On September 27, 2022, the trial court denied the City's motion to enforce the 2014 judgment. It addressed the parties' disagreement as to what dust control measures the District was authorized to order in a cultural resources area that had previously

---

[9] The City argued that the District could only order "reasonable measures" under section 42316 on those portions of the lake bed not covered under the stipulated judgment.

10

received the "deferred" designation, but was being taken out of "deferral" and reordered for dust control. The court found that "the 2014 Stipulated Judgment is *silent* as to what dust control measures the District may order when a portion of the Phase 9/10 area is deferred and then removed from deferral," and it found no evidence in the record that the parties "ever actually 'agreed' on the treatment of this area at the time the 2014 Stipulated Judgment was entered." Thus, the court concluded, "there was no mutual agreement as to how a Phase 9/10 area deferred pursuant to Paragraph 2.B was to be treated once deferral is no longer necessary and the area is ready to be ordered for dust control measures." Accordingly, the court held: "[T]he 2014 Stipulated Judgment is unenforceable as to the Sibi Patsiata-wae-tü area because of its status as an area that was deferred pursuant to Paragraph 2.B. The remainder of the 2014 Stipulated Judgment is not impacted by this determination, and the Court makes no findings as to the legality or enforceability of those provisions as such a determination would exceed the scope of the instant motion." (Footnote omitted.)

The trial court then concluded that it did not need to address the City's arguments regarding the District's order to pay because that order was unenforceable under the 2014 judgment based on its other conclusions. It reasoned: "The Order to Pay stems from the 2021 Order, which was issued pursuant to the District's purported authority under the 2014 Stipulated Judgment to order dust control measures in the Sibi Patsiata-wae-tü area. The Court has found unenforceable the 2014 Stipulated Judgment as it applies to the Sibi Patsiata-wae-tü area given its status as an area that was deferred pursuant to Paragraph 2.B. Because the Order to Pay relies on the District's ability to seek stipulated penalties for violations of the 2014 Stipulated Judgment, the Order to Pay is now unenforceable. The Court issues no opinion as to whether the City may be subject to civil penalties pursuant to the Health and Safety Code for failing to comply with a valid order. Such a determination would exceed the limited scope of the present motion."

11

As to the District's argument that the City waived its right to challenge any order issued concerning the Sibi Patsiata-wae-tü area by agreeing to the 2014 judgment, the court stated: "The Court has significant concerns about this position, as it would be contrary to the public interest for a Court to determine a regulating body has unfettered authority to order a public agency to take action in a certain geographic area because the public agency had ostensibly waived all rights to argue such an order is illegal. In light of the Court's conclusions on this motion, the Court will not discuss these concerns further."

The District gave notice of this ruling on September 28, 2022. It did not appeal or seek reconsideration of the court's first ruling.

On October 5, 2022, the District sent a letter to the City acknowledging the court's order had concluded that agreed upon penalties under the 2014 judgment were an improper remedy, but recognizing that the court "issued no opinion as to whether the City may be subject to civil penalties under the Health and Safety Code for the City's failure to comply with a valid order." Therefore, the District "require[d] the City to resolve the pending [notice of violation]" by agreeing to comply with the 2021 District order, or it would seek a court order for injunctive relief.[10]

*The District's Motion to Enforce the 2014 Judgment*

On January 3, 2023, the District filed its own motion to enforce the 2014 judgment. It asserted that "the City still refuses to comply with the 2021 District Order"

---

[10] On October 18, 2022, the District filed a lawsuit in Sacramento County, seeking to force the City to comply with the 2021 District Order under section 42316 and seeking statutory penalties (§§ 42402, 42403) and injunctive relief (§ 41513). The District's subsequent motion to enforce the stipulated judgment referred to this lawsuit as "*City II*." The next day, the City filed a writ in the Los Angeles County Superior Court, challenging the District's 2022 letter requiring it to resolve the notice of violation. The District's subsequent motion to enforce the stipulated judgment referred to this lawsuit as "*City III*."

12

because it "misreads the Court's September Ruling as granting, not denying its motion. The City says the Court held the 2021 District order was unenforceable under the 2014 Stipulated Judgment."

The District provided three reasons why the Court should enforce the 2014 judgment against the City. First, it asked the trial court to "address the City['s] misstatement of the Court's September Ruling, and reiterate (although it should not have to) that the City's motion was denied, and that the 2021 District Order remains valid and enforceable under Section 42316."

Second, it recognized that the trial court's first ruling had " 'expressed significant concerns' " about the District's position that the City had waived its right to challenge District orders by entering into the 2014 judgment, but noted that the first ruling did not invalidate that provision of the 2014 judgment. Accordingly, the District submitted declarations with its motion to "provide context and to confirm the meaning of [the 2014 judgment's] terms."

Third, the District argued that "the City's failure to timely appeal the 2021 District Order [to the Board] also waive[d] its challenges to [the] reasonableness or validity of that Order."

In opposition, the City argued in part that the District's motion was an untimely and improper motion for reconsideration of the trial court's first ruling, the District's claims were barred by claim preclusion because it did not timely appeal the court's first ruling, its arguments requested that the court act in excess of the court's jurisdiction, its arguments improperly sought an advisory opinion, it sought rulings on issues pending in other courts, and its interpretation of the waiver provisions in the 2014 judgment was void as against public policy.

*The Trial Court's Second Ruling*

In advance of a hearing, the trial court issued a tentative ruling denying the District's motion. The tentative ruling incorporated the court's first ruling, which the

13

court summarized as determining that " 'the 2014 Stipulated Judgment is unenforceable as to the Sibi Patsiata-wae-tü area because of its status as an area that was deferred pursuant to Paragraph 2.B.' "

Characterizing the District's motion as asking it to enforce the 2014 judgment and to order the City to comply with the 2021 District order to implement dust control mitigation in the Sibi Patsiata-wae-tü area, the court denied the motion "based on the detailed analysis and reasons in the Court's September 27, 2022[,] order determining that the 2014 Stipulated Judgment *is not* enforceable as to the Sibi Patsiata-wae-tü area."

Turning to the District's argument that the City waived its right to contest the 2021 District Order, the trial court reiterated its conclusion from the first ruling that that issue "was *not* an issue before this Court as previously stated by the Court, and it is not properly before the Court in this Motion to Enforce the 2014 Stipulated Judgment." The court clarified that its previous order did not opine as to the enforceability of the 2021 District order, but rather concluded that "the 2014 Stipulated Judgment is not enforceable as to the Sibi Patsiata-wae-tü area, for the reasons stated" in its first ruling. The court noted that it made no further findings about other provisions of the 2014 judgment.

Finally, the tentative ruling declined to address other arguments raised by the parties, "as these arguments effectively constitute a motion for reconsideration pursuant to Code of Civil Procedure section 1008,"[11] and therefore were untimely.

On February 27, 2023, after the hearing, the trial court issued its final ruling. The court noted the District's argument at the hearing that its motion was not a motion for reconsideration because it was seeking to have the court enforce the " 'grand

---

[11] Code of Civil Procedure section 1008 provides in part: "[A]ny party affected by [a court] order may, within 10 days after service upon the party of written notice of entry of the order and based upon new or different facts, circumstances, or law, make application to the same judge or court that made the order, to reconsider the matter and modify, amend, or revoke the prior order."

14

bargain' agreed to by the parties in the 2014 Stipulated Judgment," which was an issue that was not addressed by the court's first ruling. The court disagreed: "The problem with the District's argument, however, is that the District seeks to have the 'grand bargain' enforced as to the Sibi Patsiata-wae-tü area, when this Court has already concluded that the terms of the 2014 Stipulated Judgment, including the 'grand bargain' cannot apply to that area."

Next, the court observed that the District "goes further by asking this Court to opine as to whether . . . section 42316 provides legal authority for the District's 2021 order relating to the Sibi Patsiata-wae-tü area, and to determine that the stipulated judgment is a valid waiver of the City's ability to challenge the [2021 District order]." It concluded that the District was "seeking to have this Court, under the auspices of this Motion, render an improper advisory opinion as to matters which are beyond even the continuing jurisdiction of this Court." Accordingly, it held: "Simply put, the 2021 [District] Order *only* concerns implementing dust control mitigation in the Sibi Patsiata-wae-tü area. Once, [*sic*] this Court decided that the 2014 Stipulated Judgment could not apply to the Sibi Patsiata-wae-tü area, for the detailed reasons provided in the Court's Ruling on Submitted Matter issued on September 27, 2022, the Court necessarily had to decline to further address specific provisions of the 2014 Stipulated Judgment as to this area. This includes the parameters of the District's statutory authority under Section 42316 and any waivers by the City, as well as the provisions in Paragraphs 3A. [*sic*] and 3B, or what the District refers to as the parties' 'grand bargain.' [¶] The motion is DENIED. Moreover, if construed as a Motion for Reconsideration, the Court denies it as untimely." (Boldface omitted.) In a footnote at the end of the last sentence of the order, the court noted that, "[f]or example," the District had filed a declaration intended to provide the court with new information about the parties' intent in negotiating the 2014 judgment, which was "plainly an attempt to persuade the Court to reconsider" its first order.

15

The District appealed. The case was fully briefed in May 2024, assigned to the current panel at the end of that month, and argued and submitted on August 20, 2024.

## DISCUSSION

### I

### *Appealability*

The City argues that the District's appeal must be dismissed because the trial court's order denying the District's motion to enforce the 2014 judgment was a nonappealable order denying an untimely motion for reconsideration. We agree.[12]

A. *Legal Background*

Code of Civil Procedure, section 1008 represents the Legislature's attempt to regulate what the Supreme Court has referred to as "repetitive motions" (*Le Francois v. Goel* (2005) 35 Cal.4th 1094, 1103, 1104), and is "designed to conserve the court's resources by constraining litigants who would attempt to bring the same motion over and over" (*Darling, Hall & Rae v. Kritt* (1999) 75 Cal.App.4th 1148, 1157). Subdivision (a) of Code of Civil Procedure section 1008 provides in pertinent part: "[A]ny party affected by [a court] order may, within 10 days after service upon the party of written notice of

---

[12] The District requests judicial notice of the Board's decision on the City's appeal of the notice of violation, and the City's subsequent petition for administrative writ of mandamus, filed in Los Angeles County Superior Court. We deny the District's request. First, the requested material was filed after the trial court's second ruling in this case, and therefore we are not required to take judicial notice of the material. (Evid. Code, § 459, subd. (a).) Second, we "may decline to take judicial notice of matters not relevant to dispositive issues on appeal." (*Guarantee Forklift, Inc. v. Capacity of Texas, Inc.* (2017) 11 Cal.App.5th 1066, 1075.) The District argues that the material is relevant to this appeal because it includes the Board's interpretation of section 42316, the proper procedures to appeal a District order under that section, and the consequences for failing to file a timely appeal. But as we will discuss in greater detail *post*, the issue before us is whether the District is appealing from an appealable order. The material submitted by the District regarding the City's appeal to the Board of the notice of violation under section 42316 has no bearing on our determination.

entry of the order and based upon new or different facts, circumstances, or law, make application to the same judge or court that made the order, to reconsider the matter and modify, amend, or revoke the prior order." The statute is jurisdictional (Code Civ. Proc., § 1008, subd. (e)), and therefore a trial court acts in excess of its jurisdiction in granting a motion for reconsideration if untimely filed. (*Garcia v. Hejmadi* (1997) 58 Cal.App.4th 674, 690-691; *G.R. v. Intelligator* (2010) 185 Cal.App.4th 606, 622.)

In determining whether a motion is properly construed as a motion for reconsideration, "a trial court may construe a motion bearing one label as a different type of motion." (*Sole Energy Co. v. Petrominerals Corp*. (2005) 128 Cal.App.4th 187, 193.) " 'The nature of a motion is determined by the nature of the relief sought, not by the label attached to it. The law is not a mere game of words.' " (*Ibid.*; accord, *California Correctional Peace Officers Assn. v. Virga* (2010) 181 Cal.App.4th 30, 43 [second motion seeking identical relief to a previous motion is motion seeking reconsideration].) Thus, "[t]he name of a motion is not controlling, and, regardless of the name, a motion asking the trial court to decide the same matter previously ruled on is a motion for reconsideration under Code of Civil Procedure section 1008." (*Powell v. County of Orange* (2011) 197 Cal.App.4th 1573, 1577 [motion asking the court "to decide again" whether to set aside the dismissal judgment is a motion for reconsideration]; see *Escamilla* v. *Department of Corrections & Rehabilitation* (2006) 141 Cal.App.4th 498, 511 ["[T]he true nature of a petition or cause of action is based on the facts alleged and remedy sought in that pleading"]; *Curtin v. Koskey* (1991) 231 Cal.App.3d 873, 878 [regardless of motion's title, to the extent it raises the same issues previously ruled upon, it is a motion for reconsideration]; *David S. Karton, a Law Corp. v. Musick, Peeler Garrett LLP* (2022) 83 Cal.App.5th 1027, 1049 [no perceivable difference between a motion to " 'seek re-examination of the trial court's legal conclusions' " and the " 'reconsider[ation of] the matter' " contemplated under Code Civ. Proc., § 1008, subd. (a)]; but see *Standard Microsystems Corp. v. Winbond Electronics Corp.* (2009) 179

Cal.App.4th 868, 889, 890-891 (*Standard Microsystems*) [a motion is not a motion for reconsideration if it rests on entirely different factual and legal predicates than the previous motion], disapproved of on other grounds by *Even Zohar Construction & Remodeling, Inc. v. Bellaire Townhouses, LLC* (2015) 61 Cal.4th 830.)

The denial of a motion for reconsideration is not a separately appealable order. (Code Civ. Proc., § 1008, subd. (g); *Young v. Tri-City Healthcare Dist.* (2012) 210 Cal.App.4th 35, 51.) That well-established rule "exists ' "to eliminate the possibilities that (1) a nonappealable order or judgment would be made appealable, (2) a party would have two appeals from the same decision, and (3) a party would obtain an unwarranted extension of time to appeal." ' " (*Westmoreland v. Kindercare Education LLC* (2023) 90 Cal.App.5th 967, 974.) Further, "[b]ecause an appealable judgment or order is essential to appellate jurisdiction, the appellate court must consider the question of appealability sua sponte, and dismiss the appeal if the judgment or order is found to be nonappealable." (*People v. Clark* (2021) 67 Cal.App.5th 248, 254.) Thus, in determining whether an order is appealable, "it is not the label but rather the substance and effect of a court's judgment or order which determines whether or not it is appealable." (*In re Marriage of Loya* (1987) 189 Cal.App.3d 1636, 1638; *Dana Point Safe Harbor Collective v. Superior Court* (2010) 51 Cal.4th 1, 5 [" ' "It is not the form of the decree but the substance and effect of the adjudication which is determinative" ' "]; *Joyce v. Black* (1990) 217 Cal.App.3d 318, 321 ["The substance and effect of the order, not its label or form, determines whether it is appealable" ]; *Orton v. Daigler* (1932) 120 Cal.App. 448, 450 ["The character of the document, whether it be an order or a judgment, may not be determined except by the substance and effect of its provisions"].)

Indeed, appellate courts may, where " 'extremely good cause' " exists, construe one type of motion to instead be a *different* type of motion, one that is different than the title assigned to it by its filer. (See *20th Century Ins. Co. v. Superior Court* (2001) 90 Cal.App.4th 1247, 1261; *Passavanti v. Williams* (1990) 225 Cal.App.3d 1602, 1610.)

18

"Extremely good cause" exists where, as here, the court must first decide whether an order stemming from such motion is appealable, which informs whether we have jurisdiction to review it. (See *Lavine v. Jessup* (1957) 48 Cal.2d 611, 613 ["no appeal can be taken except from an appealable order or judgment, as defined in the statutes and developed by the case law"].) Thus, there is extremely good cause to independently determine the precise nature of the District's motion, no matter its title, to decide whether it actually constitutes a motion for reconsideration, the denial of which would result in a nonappealable order. (See *Daugherty v. City and County of San Francisco* (2018) 24 Cal.App.5th 928, 942 [appealable judgment essential to appellate jurisdiction; court must dismiss appeal from a nonappealable order]; *Olson v. Cory* (1983) 35 Cal.3d 390, 398 [court is "dutybound" to consider the question of appellate jurisdiction on its own motion]; *Olmstead v. West* (1960) 177 Cal.App.2d 652, 654-655 ["[I]t is the duty of an appellate court on its own motion to dismiss an appeal from a judgment which is not appealable"].)

B. *Analysis*

The City argues that the District's appeal must be dismissed because its motion "to enforce the 2014 stipulated judgment" was in fact an untimely and unappealable motion for reconsideration of the trial court's first ruling, aptly described as such by the trial court when it denied the motion in its second ruling. The District responds that the court's second ruling did not simply conclude that the its motion was an untimely motion for reconsideration, but rather created three categories for its arguments: (1) arguments the court concluded should have been raised in a motion for reconsideration; (2) arguments the court denied "based upon the detailed analysis and reasons" in the court's first order; and (3) arguments the court declined to reach or rule upon in either party's motion to enforce the 2014 judgment.

19

As we next explain, we agree with the City. The District's motion sought to enforce the 2014 judgment as to the Sibi Patsiata-wae-tü area on bases that were addressed by the trial court's first ruling, and the substance and effect of the trial court's second ruling was to deny the District's motion on the basis that it had already ruled on the arguments raised. In other words, the District's motion sought, by "sly evasion, a determination contrary to [a] determination made in the first order." (*Standard Microsystems*, *supra*, 179 Cal.App.4th at p. 891.) We turn to an examination of the arguments raised by the District's motion, and the trial court's first and second rulings.

The District's first argument in support of its motion to enforce the 2014 judgment asked the trial court to "reiterate . . . that the 2021 District Order remains valid and enforceable under Section 42316." But while this argument ostensibly requested that the court "reiterate" its conclusion from its first ruling, it actually requested that the court rule on an issue the court had already determined was beyond the scope of a motion to enforce the 2014 judgment.

As the District recognized in its motion, the trial court's first ruling concluded that the 2014 judgment was unenforceable as to the Sibi Patsiata-wae-tü area, and based on that conclusion, the court "issue[d] no opinion as to whether the City may be subject to civil penalties pursuant to the Health and Safety Code for failing to comply with a valid order," noting that "[s]uch a determination would exceed the limited scope of the present motion." The court's second ruling clarified that once it had determined in the first ruling that the 2014 judgment was unenforceable as to the Sibi Patsiata-wae-tü area, it "necessarily had to decline to further address specific provisions of the 2014 Stipulated Judgment as to this area. This includes the parameters of the District's statutory authority under Section 42316 . . . ." In other words, the court's second ruling only "clarified" that it had *already determined* in the first ruling that it could not grant the relief the District requested.

20

The trial court's second ruling concluded that the District's argument requested the court "to render an improper advisory opinion as to matters which are beyond even the continuing jurisdiction of this Court." Although the court did not expressly conclude that the District's request constituted a motion for reconsideration, that is what it was. The District sought to have the court revisit a conclusion it had already reached in its first ruling, and reach a different conclusion. Accordingly, the District's argument "ask[ed] the trial court to decide the same matter previously ruled on" in the order denying the City's motion to enforce the 2014 judgment. (*Powell v. County of Orange*, *supra*, 197 Cal.App.4th at p. 1577; cf. *Curtin v. Koskey*, *supra*, 231 Cal.App.3d at p. 878 [regardless of motion's title, to the extent it raises the same issues previously ruled upon, it is a motion for reconsideration].) As such, it was a request for reconsideration.

The second argument raised by the District in its motion to enforce the 2014 judgment requested that the trial court enforce the parties' " 'grand bargain,' " in which the City agreed to not challenge District orders to implement dust mitigation controls at Owens Lake, and the District agreed to limit the area in which it could order the City to implement dust control measures. The District's motion recognized that the trial court's first ruling had "expressed its concern" about the District's position that the City waived its right to appeal or challenge District orders by signing the 2014 judgment, and it sought to address the court's concerns.

Because the trial court's first ruling concluded that the 2014 judgment was unenforceable as to the Sibi Patsiata-wae-tü area, the court concluded in a footnote that it did not need to address the merits of the District's waiver argument. During the hearing on the District's motion, the court elaborated on its first ruling: "But what I found was that the dispute involving the Sibi [Patsiata-wae-tü] area wasn't covered by the stipulated judgment. So if it is not covered by the stipulated judgment, whether the City waived its right to contest the 2021 [District] order addressing that area, I couldn't deal with it anyway." It added: "If what I found is beyond the Court's jurisdiction, if parties never

21

agreed on what the treatment of that area would be, then what remedies, what rights the parties have with respect to that area was surely beyond the Court's authority to opine. [¶] And that's what the purpose of that footnote was is everything having to do -- every dispute having to do with that area, the parties' respective rights and remedies under the stipulated judgment was beyond the Court's authority to opine on because they found there was no meeting of the minds. [¶] So if we are talking about enforcing a judgment or any agreement when there is no meeting of the minds, everything falls away, including what the parties' respective remedies might be with respect to the disputed terms of any agreement. That's the purpose of the Court's footnote there." Consistent with its discussion of the issue during the hearing, the trial court's second ruling refused to enforce the parties' "grand bargain." The court observed that once it determined the 2014 judgment "could not apply to the Sibi Patsiata-wae-tü area," it "necessarily had to decline to further address specific provisions of the 2014 Stipulated Judgment as to this area," including "any waivers by the City."

Similar to the District's first argument, its request that the trial court enforce the parties' grand bargain was merely a request that the trial court revisit its first ruling, where the court had concluded that it could not reach the issue, and rule instead that it could indeed reach the issue (and then rule in the District's favor). As with the District's first argument, this argument was simply a request that the trial court reconsider its first ruling, and change its mind.

The District's third argument contended the City failed to appeal the 2021 District Order to the Board as required by section 42316, subdivision (b), and accordingly the City had waived its right to appeal even in the absence of the express waivers provided for in the 2014 judgment. The District raised this argument in opposition to the City's motion to enforce the 2014 judgment, and the trial court's first ruling noted that the parties raised "[n]umerous arguments . . . that go beyond the issue of whether the District is in violation of the 2014 Stipulated Judgment." The court declined to address those

22

arguments because, as we have discussed, its continuing jurisdiction was limited to enforcing the 2014 judgment, and the issue of the City's compliance with other statutory requirements was beyond the scope of that motion.

In its second ruling, the court reiterated that once it had determined in the first ruling that the 2014 judgment was unenforceable as to the Sibi Patsiata-wae-tü area, "the Court necessarily had to decline to further address" "the parameters of the District's statutory authority under Section 42316 and any waivers by the City." Accordingly, it refused the District's invitation to issue an improper advisory opinion ruling on an issue not properly before the court, as it implicitly did in its first ruling. That conclusion was no different than the conclusion the court reached in its first ruling. Because the District's argument asked the trial court to reach a different conclusion on an issue it had already addressed, the District's argument sought reconsideration of the trial court's first order.

Disagreeing with the foregoing analysis, the District argues that the trial court did not deny its motion in its entirety on the basis that it was an untimely motion for reconsideration. It points to the trial court's conclusion: "Moreover, if construed as a Motion for Reconsideration, the Court denies it as untimely," after which the trial court provided an example in a footnote of an argument it observed was "plainly an attempt to persuade the Court to reconsider its [first order]." That footnote observed that the District filed a declaration in support of its motion that purported to provide the court with new information about the parties' intent in negotiating the 2014 judgment, and whether the parties agreed to procedures for deferring and reordering controls in areas where sensitive cultural resources may be present. As quoted above, the court concluded the declaration was an attempt to persuade it to reconsider its previous order.

23

As we have discussed, we are tasked with determining whether we have jurisdiction to consider the District's appeal. In doing so, we have analyzed the conclusions the trial court reached in its first ruling and the relief sought by the District in its motion to enforce the 2014 judgment. We have determined that the District's motion "to enforce the 2014 stipulated judgment" raised the same issues the court had previously ruled upon, for the (at times express) purpose of requesting that the court change its prior conclusions. Indeed, in rejecting the District's various arguments in its second ruling, the court summarized and reiterated the conclusions it reached in its first ruling and observed that the first ruling had already rejected the arguments raised in the District's motion.

Finally, the District also argues that it was not required to appeal a judgment in its favor or file a motion for reconsideration of a ruling in which it prevailed. But our conclusion is not that these things were required of the District. We are not called upon to decide whether the District was required to appeal the trial court's first ruling, or file a motion requesting that the court reconsider that ruling. Rather, the issue before us is whether the District's motion to enforce the 2014 judgment was properly construed as a motion for reconsideration of the trial court's first ruling and, if so, whether the District's appeal from that court's *second* ruling must be dismissed as from a nonappealable order. Because we conclude the District's motion "to enforce the 2014 stipulated judgment," denied by the trial court in the order that formed the basis of this appeal, was in fact a motion for reconsideration, it follows that the District's appeal is from a nonappealable order and must be dismissed.

**DISPOSITION**

The District's appeal is dismissed.  The City shall recover its costs on appeal.

(Cal. Rules of Court, rule 8.278(a).)


/s/
Duarte, J.


We concur:


/s/
Earl, P. J.


/s/
Wiseman, J.*

---

*  Retired Associate Justice of the Court of Appeal, Fifth Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

25